1
2
3
4
5
6            **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE DISTRICT OF ARIZONA**

8

9   Benjamin Scott Hammar,                    No. CV-15-01940-PHX-DLR (BSB)

10                    Petitioner,              **REPORT AND**
                                               **RECOMMENDATION**
11   v.

12   Charles L. Ryan, et al.,

13                    Respondents.

14

15          Petitioner Benjamin Scott Hammer has filed a Petition for Writ of Habeas Corpus

16   pursuant to 28 U.S.C. § 2254 and a supporting memorandum.  (Docs. 1, 2.)  In their

17   answer, Respondents argue that Petitioner is not entitled to habeas corpus relief because

18   his claims are either procedurally barred from federal habeas corpus review or lack merit.

19   (Doc. 11.)  Petitioner has not filed a reply in support of his Petition and the deadline to do

20   so has passed.  (*See* Doc. 4.)  For the reasons below, the Court recommends that the

21   Petition be denied.

22   **I.      Factual and Procedural Background**

23          **A.      Charges, Trial, and Sentencing**

24          In February 2008, Petitioner was indicted in the Maricopa County Superior Court

25   on one count of second-degree murder.[1]  (Doc. 11, Ex. A.)  Before trial, Petitioner

26   _____

27          [1]  Petitioner was also charged with one count of misconduct involving weapons
     (Count Two).  (Doc. 11, Ex. A.)  Count Two was severed for trial.  (Doc. 11, Ex. J at 4
28   n.2.)  After his trial for second-degree murder, Petitioner pleaded guilty to Count Two
     and was sentenced to a presumptive, concurrent ten-year term of imprisonment.  (*Id.*)
     The Petition does not challenge Petitioner's conviction or sentence on Count Two.

requested a competency evaluation because he claimed a 2007 brain injury caused a memory impairment that rendered him unable to assist in his defense. (Doc. 11, Ex. J at 4.) The trial court appointed two experts to evaluate Petitioner and, at a subsequent hearing, considered reports from the experts, testimony from defense expert Dr. Sullivan, and testimony from the neurosurgeon who had removed a blood clot from Petitioner's brain in 2007. (*Id.*) The trial court found Petitioner competent to stand trial. (*Id.*) After a trial, the jury found Petitioner guilty of second-degree murder, and the trial court sentenced Petitioner to an aggravated term of eighteen-years' imprisonment. (*Id.*)

Petitioner's second-degree murder conviction was based on the following events, as described by the Arizona Court of Appeals.[2] On January 31, 2008, two men, Chris and Merritt, drove Merritt's truck from California to Phoenix. (Doc. 11, Ex. J at 2.) In Phoenix, they met Petitioner at the house he shared with his girlfriend, Ellacia. (*Id.*) That evening, Petitioner became "sloppy drunk." (*Id.*) Petitioner told his friend Kim that Merritt had guns and a nice truck and said "something about jacking [Merritt]." (*Id.*)

Kim later saw Merritt in his truck, with Petitioner standing next to the open door. (*Id.*) Petitioner put Merritt in a headlock and punched him in the face. (*Id.*) Merritt was upset that he "got hit for no reason" and left to go to Angie's house. (*Id.*) Chris and Petitioner later went to Angie's house. (*Id.*) Petitioner left Angie's house early in the morning on February 1, 2008. (*Id.*) Later that morning, Merritt found his truck window broken and several items missing, including a Glock 9mm handgun that had been in a secure lockbox. (*Id.*) Merritt called his dad to get the gun's serial number and called the police to report the incident. (*Id.*)

Later that day, Merritt, Chris, and Petitioner went to the house Petitioner shared with Ellacia. (*Id.* at 3.) Merritt and Petitioner were in the backyard. (*Id.*) Chris was in the front yard when he heard a gunshot that "sounded close," and then saw Petitioner

---

[2] The Arizona Court of Appeals' recitation of the facts is presumed correct. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that statement of facts in state appellate court's opinion should not be afforded the presumption of correctness).

walk from the backyard holding Merritt's gun. (*Id.*) Petitioner also had Merritt's cell phone and gun magazines. (*Id.*) Chris walked away, but Petitioner followed him and fired the gun once or twice. (*Id.*)

Chris, Petitioner and another person, David, returned to Ellacia's house. (*Id.*) Petitioner backed Merritt's truck up to the backyard gate and dragged Merritt's body to the truck. (*Id.*) Chris helped him lift the body into the truck bed. (*Id.*) Petitioner drove the truck into the desert. (*Id.*) Chris watched Petitioner pull Merritt's body onto the road and drag it into a wash. (*Id.*) When Ellacia got home, her gate was open and there was blood in the backyard. (*Id.*) She called police who discovered a pool of blood, Merritt's wallet and identification, and a handwritten note containing the serial number of his handgun. (*Id.*) Testing revealed that the blood was Merritt's. (*Id.*)

Petitioner was arrested at around 1:15 a.m. on February 2, 2008. (*Id.*) He had in his possession Merritt's gun, two loaded magazines, and the key to Merritt's truck. (*Id.*) Petitioner was wearing Merritt's sweatshirt, which was stained with Merritt's blood. (*Id.*) Gunshot residue testing revealed Petitioner may have "discharged a firearm, may have been in close proximity of a firearm discharged, or may have contacted something with [gunshot residue] on it." (*Id.* at 3-4.) Later that day, Chris went to the police station and explained what had happened, omitting his involvement. (*Id.* at 4.) Chris later admitted his involvement and led police to the body. (*Id.*) Merritt was killed by a single gunshot to the back of his head with a 9mm bullet from a Glock-type handgun. (Doc. 11, Ex. J at 4.)

**B.    Direct Appeal**

Petitioner filed a direct appeal challenging his conviction for second-degree murder. (Doc. 11, Exs. B, J.) Petitioner raised the following claims: (1) the trial court violated his due process rights by using the wrong standard to determine his competency to stand trial and the evidence did not support the court's competency decision (Doc. 11, Ex. B at ii); (2) the trial court erred by precluding evidence related to Petitioner's third-party culpability defense that Chris killed Merritt and blamed Petitioner by taking

advantage of his memory impairment (*Id.* at ii, 34); (3) the trial court violated Rule 404(b) of the Arizona Rules of Evidence by admitting other act evidence and violated Petitioner's Confrontation Clause rights by admitting Merritt's statements about his truck being burglarized and his gun being stolen (*Id.* at ii, 49); (4) the trial court abused its discretion by denying Petitioner's request for a *Willits* instruction regarding the police's failure to preserve a lockbox cable from Merritt's truck (*Id.*); and (5) the evidence was insufficient to support his conviction.  (*Id.* at ii, 62.)  The appellate court rejected Petitioner's claims and affirmed his conviction and sentence.  (Doc. 11, Ex. J.)  Petitioner sought review in the Arizona Supreme Court, and the court denied review on December 4, 2012.  (Doc. 11, Ex. H.)

### C.    Post-Conviction Proceedings

On December 11, 2012, Petitioner filed a notice of post-conviction relief in the trial court pursuant to Rule 32 of the Arizona Rules of Criminal Procedure.  (Doc. 11, Ex. K.)  On February 5, 2014, Petitioner, through counsel, filed a petition for post-conviction relief asserting three allegations of ineffective assistance of trial counsel.  (Doc. 11, Ex. L.)  The trial court denied relief.  (Doc. 11, Ex. N.)  Petitioner moved for a rehearing, which the court denied on September 29, 2014.  (Doc. 11, Exs. O, P.)

On October 24, 2014, Petitioner filed a petition for review in the Arizona Court of Appeals.  (Doc. 11, Ex. Q.)  The State filed a response.  (Doc. 11, Ex. R.)  To date, the Arizona Court of Appeals has not ruled on the petition for review.  (Doc. 11, Ex. S.)  However, the status of that appeal is inconsequential because the claims of ineffective assistance of counsel that Petitioner raised on post-conviction review are not presented in the pending Petition.  (*Compare* Docs. 1 and 2 *with* Doc. 11, Exs. L, Q.)

### D.    Federal Petition for Writ of Habeas Corpus

On September 28, 2015, Petitioner filed a petition for writ of habeas corpus in this Court raising the following claims: (1) the trial court violated Petitioner's federal constitutional right to due process by finding him competent to stand trial under the wrong standard, and failing to address the effect of his memory impairment on

competency (Ground One) (Doc. 1 at 7); (2) the trial court violated Petitioner's federal due process rights by excluding evidence of third-party culpability (Ground Two) (Doc. 1 at 25); (3)(a) the trial court violated Petitioner's federal due process rights by admitting evidence of Petitioner's physical attack against Merritt and comments about wanting to steal Merritt's gun and truck the night before the incident (Ground Three (a)); (b) the trial court violated the Confrontation Clause by admitting testimony that Merritt claimed his gun had been stolen (Ground Three (b)); and (c) the trial court violated *Brady v. Maryland*, 373 U.S. 83 (1963), and *California v. Trombetta*, 467 U.S. 479 (1984), by failing to preserve the lockbox cable from Merritt's truck, which Petitioner alleges was potentially exculpatory (Ground Three (c)).  (Doc. 1 at 35; Doc. 2 at 7-9.)

Respondents argue that Grounds Two, Three (a), and Three (c) are procedurally barred from federal habeas corpus review.  (Doc. 11 at 9-14.)  Respondents state that Grounds One and Three (b) are properly before the Court, but argue that Petitioner is not entitled to relief on those claims.  (Doc. 11 at 9, 18-25.)

## II.     Exhaustion and Procedural Bar

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b).  To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner.[3]  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based.  *See Baldwin*, 541 U.S. at

---

[3] In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F. Supp. 2d 925, 931-33 (D. Ariz. 2007).

33.  A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Id.* at 31-32.  Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights.  *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims.  *See Coleman*, 501 at 731-32.  Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims.  *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).  If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted.  *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds.  *See Beard v. Kindler*, 558 U.S. 53 (2009).  "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance."  *Coleman*, 501 U.S. at 731-32.  In this situation, federal habeas corpus review is precluded if the state court

opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).

A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See id.* at 729-32.

However, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross*, 468 U.S. 1, 9 (1984). Generally, a federal court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court and "prejudice" from the alleged constitutional violation, or shows that a "fundamental miscarriage of justice" would result if the claim were not heard on the merits. *Coleman*, 501 U.S. at 750. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

1

**A.      Grounds Two, Three (a), and Three (c) are Procedurally Barred**

In Ground Two, Petitioner asserts that the trial court violated his federal due process rights by excluding evidence of third-party culpability. (Doc. 1 at 25.) On direct appeal, Petitioner challenged the exclusion of the same evidence of third-party culpability. (Doc. 11, Ex. B at 34-49.) However, Petitioner challenged the exclusion of that evidence solely as a matter of state law and did not present a federal claim. (*Id.*) The appellate court resolved the claim under state law. (Doc. 11, Ex. J at 9-14.) Additionally, Petitioner did not present the claim asserted in Ground Two on post-conviction review. (Doc. 11, Ex. L.) Accordingly, Petitioner did not present the federal claim asserted in Ground Two to the state appellate court. *See Johnson v. Zenon*, 88 F.3d 828, 830- 31 (9th Cir. 1996) (argument raised under state law does not alert state court to the federal nature of a claim).

Similarly, Petitioner did not present Grounds Three (a) or (c) to the Arizona Court of Appeals either on direct appeal or post-conviction review. Ground Three (a) raises a federal due process claim based on the trial court's admission of other act evidence. (Doc. 1 at 35.) Petitioner challenged the admission of other act evidence on direct appeal on the basis of state law, but did not present a federal claim. (Doc. 11, Ex. B at 57-64.) The appellate court resolved the claim on the basis of state law. (Doc. 11, Ex. J at 14-16.) Petitioner did not present the federal claim asserted in Ground Three (a) on post-conviction review. (Doc. 11, Ex. L.)

In Ground Three (c), Petitioner asserts a *Brady* violation based on the failure to preserve evidence from the victim's truck. (Doc. 1 at 45.) On direct appeal, Petitioner did not present a federal claim based on the failure to preserve evidence, but instead argued that the trial court erred by failing to instruct the jury regarding the failure to preserve evidence under *State v. Willits*, 393 P.2d 274 (1964). (Doc. 11, Ex. B at 61-64.) Petitioner did not present the federal claim asserted in Ground Three (c) on post-conviction review.[4] (Doc. 11, Ex. L.)

_____

[4] Ground Three (c) can be construed as alleging that the trial court erred by failing to give a *Willits* instruction. (Doc. 1 at 39.) That claim is not cognizable on federal

In summary, Petitioner did not present the federal claims asserted in Grounds Two, Three (a), and Three (c) to the Arizona Court of Appeals either on direct appeal or post-conviction review.   Those claims are technically exhausted and procedurally barred because it would be futile for Petitioner to return to the state courts to try to exhaust those claims.   A successive petition for post-conviction relief would be untimely under Rule 32.4, and his claims would be precluded from Rule 32 review because they could have been raised on direct appeal or in Petitioner's prior post-conviction proceeding.   *See Teague*, 489 U.S. at 297-99; see *also* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a); *State v. Bennett*, 146 P.3d 63, 67 (2006) ("As a general rule, when [claims] are raised, or could have been raised, in a Rule 32 post-conviction proceeding, subsequent claims [] will be deemed waived and precluded.") (internal quotation omitted).   Rules 32.2(a)(3) and 32.4(a) are independent and adequate state grounds.   *See Simmons v. Schriro*, 187 Fed. App'x. 753, 754 (9th Cir. 2006) (holding that Arizona's procedural rules, including its timeliness rules, are "clear" and "well-established"); *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (finding Rule 32.2(a)(3) regularly followed and adequate).

Additionally, Petitioner's claims do not satisfy any of the exceptions to the timeliness or preclusion rules in Rule 32.4(a) and Rule 32.2, including being held in custody after the imposed sentence expired, the presentation of newly discovered material facts that probably would have changed the verdict or sentence, the failure to file a timely notice of post-conviction relief or a notice of appeal that was not the defendant's fault, a change in the law, or the petitioner's actual innocence.   *See* Rules 32.2(b) and 32.4(a) (citing Rule 32.1(d), (e), (f), (g), and (h).)

Accordingly, Petitioner's claims asserted in Grounds Two, Three (a), and Three (c) are technically exhausted and procedurally barred from federal habeas corpus review. *See McKinney v. Ryan*, 730 F.3d 903, 913 n.6 (9th Cir. 2013) (finding claims

---

habeas corpus review because it is a state law issue. *See Ballesteros v. Ryan*, 2014 WL 1911443, at *7 (D. Ariz. May 13, 2014) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

procedurally defaulted because petitioner was barred from exhausting his claims in the first instance by Rules 32.2(a)(3) and 32.4(a)).

**B.    Petitioner has not Established a Basis to Overcome the Procedural Bar**

Because Petitioner's claims asserted in Grounds Two, Three (a), and Three (c) are procedurally defaulted, federal habeas corpus review is unavailable unless Petitioner establishes a "fundamental miscarriage of justice" or "cause and prejudice" to overcome the procedural bar.  *See Coleman*, 501 U.S. at 749.  For the reasons below, the Court finds that Petitioner has not established a basis to overcome the procedural bar.

**1.    Fundamental Miscarriage of Justice**

A federal court may review the merits of a procedurally defaulted claim if the petitioner demonstrates that failure to consider the merits of that claim will result in a "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A "fundamental miscarriage of justice" occurs when "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

To establish a fundamental miscarriage of justice, a petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."  *Schlup,* 513 U.S. at 324.  The petitioner has the burden of demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* at 327.  Petitioner does not argue that failure to consider his defaulted claims will result in a fundamental miscarriage of justice.  (Docs. 1, 2.)  Additionally, Petitioner has not presented new evidence and has not shown that failure to consider his procedurally defaulted claims will result in a fundamental miscarriage of justice.  Thus, he has not met *Schlup's* high standard and this exception does not excuse the procedural bar.

**2.    Cause and Prejudice**

A federal court may review the merits of a procedurally defaulted claim if a petitioner establishes "cause" and "prejudice."  *Coleman*, 501 U.S. at 750.  To establish

"cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Teague*, 489 U.S. at 298. A showing of "interference by officials," constitutionally ineffective assistance of counsel, or "that the factual or legal basis for a claim was not reasonably available" may constitute cause. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

"Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see also Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). If petitioner fails to establish cause for his procedural default, then the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Petitioner does not allege cause to overcome the procedural bar to federal habeas corpus review of Grounds Two, Three (a), and Three (c). (Docs. 1, 2.) Petitioner's status as an inmate, lack of legal knowledge, and limited legal resources do not establish cause to excuse the procedural bar to review of his claims. *See Hughes v. Idaho State Bd. of Corr.,* 800 F.2d 905, 909 (9th Cir. 1986) (an illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's reliance upon jailhouse lawyers did not constitute cause). Accordingly, the Court does not consider whether Petitioner can establish prejudice. *See Smith v. Murray*, 477 U.S. 527, 533 (1986) (stating that the court does not need to consider prejudice when the petitioner does not demonstrate cause). Thus, Petitioner has not established a basis to overcome the procedural bar to federal habeas corpus review of Grounds Two, Three (a), and Three (c). Therefore, the Court will not further address these grounds for relief, but will consider Petitioner's claims that are properly before the Court

**III.    Review of Claims Adjudicated on the Merits**

Petitioner properly presented Grounds One and Three (b) to the Arizona Court of Appeals and those claims were adjudicated on the merits.  (Doc. 11, Ex. B at 17-34; 53-54, 60-61; Doc. 11, Ex. J.)  Therefore, this Court reviews those claims under § 2254(d).

Under § 2254(d), a federal court cannot grant habeas corpus relief unless the petitioner shows: (1) that the state court's decision "was contrary to" federal law as clearly established in the holdings of the Supreme Court at the time of the state court decision, *Greene v. Fisher*, __ U.S.__, 132 S. Ct. 38, 43 (2011); or (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" based on the record before the state court.  28 U.S.C. § 2254(d)(2).  This standard is "difficult to meet."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  It is a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).  When evaluating state court decisions on habeas review, federal courts look through summary or unexplained higher state court opinion to the last reasoned decision on the claim.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision.  *Greene*, 132 S. Ct. at 44.  A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted).  A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  "A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Federal courts may also grant habeas corpus relief when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), abrogated on other grounds, *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014); *see also Pollard v. Galaza*, 290 F.3d 1030, 1033, 1035 (9th Cir. 2002) (the statutory presumption of correctness applies to findings by both trial courts and appellate courts).  Additionally, state court findings of fact are presumed to be correct.  28 U.S.C. § 2254(e)(1).   A petitioner may rebut this presumption with "clear and convincing evidence." *Id.*

If the federal court determines, considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts, the court evaluates the claim de novo, and may consider evidence properly presented for the first time in federal court.  *Cullen v. Pinholster*, 536 U.S. 170, 182-84 (2011).

Additionally, when a state court decision is deemed to be contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts, a petitioner is not entitled to habeas corpus relief unless the erroneous state court ruling also resulted in actual prejudice as defined in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  *See Benn v. Lambert*, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002).  "Actual prejudice" means that the constitutional error at issue had a

1   "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*,

2   507 U.S. at 631.

3        **A.    Ground One — Competency Determination**

4        In Ground One, Petitioner asserts that the trial court violated his rights to due

5   process, effective assistance of counsel, and a fair trial by applying an incorrect standard

6   to determine his competency to stand trial and by failing to address the effect of his

7   memory impairments on competency. (Doc. 1 at 7; Doc. 2 at 1-4.) Before trial, the court

8   held a hearing pursuant to Rule 11 of the Arizona Rules of Criminal Procedure on

9   Petitioner's competency and concluded he was competent to stand trial. (Doc. 11, Ex. T;

10  Doc. 13, Ex. A.)[5] The Arizona Court of Appeals affirmed the trial court's competency

11  determination. (Doc. 11, Ex. J.) In the pending Petition, Petitioner argues that the state

12  courts' competency determinations were erroneous and that the trial court found him

13  competent to stand trial under a "reasonable grounds" standard, rather than the

14  "*Drope/Dusky* competency test." (Doc. 1 at 7-24; Doc. 2 at 1-4.) As discussed below,

15  the Court rejects Petitioner's claims.

16       In *Indiana v. Edwards*, 554 U.S. 164, 170 (2008), the Supreme Court recognized

17  that two of its cases set forth the mental competency standard. The first case, *Dusky v.*

18  *United States*, 362 U.S. 402 (1960), defines the competency standard as including both

19  "(1) whether the defendant has a rational as well as factual understanding of the

20  proceedings against him and (2) whether the defendant has sufficient present ability to

21  consult with his lawyer with a reasonable degree of rational understanding." *Edwards*,

22  554 U.S. at 170 (citing *Dusky*, 362 U.S. at 402). In *Edwards,* the Supreme Court

23

24       [5] The Rule 11 hearing was conducted on two separate days. Respondents filed the transcript from the second day, July 10, 2009, with their answer. (Doc. 11, Ex. T.) In

25  response to the Court's February 24, 2016 Order (Doc. 12), on March 16, 2016, Respondents filed the transcript from the first day of that hearing, May 21, 2009.

26  (Doc. 13, Ex. A.) The February 24, 2016 Order also requested copies of the reports of Dr. Segal and Dr. Mongrovejo, or an explanation why they could not be provided.

27  (Doc. 12.) Respondents notified the Court that those reports were sealed by the Maricopa County Superior Court. (Doc. 13.) They filed a motion to unseal those records, but the court had not ruled on that motion by the date on which the additional evidence was due.

28  (*Id.*) Although the reports would assist the Court's review of the petition, they are not necessary for the Court's resolution of Petitioner's claims.

explained that the second case, *Drope v. Missouri*, 420 U.S. 162 (1975), "repeats that standard," stating that "it has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, *to consult with counsel, and to assist in preparing his defense* may not be subjected to a trial." *Edwards*, 554 U.S at 170 (emphasis in original).

Petitioner does not dispute that he understood the nature and the object of the proceedings against him.  Rather, he asserts that he lacked the capacity to consult with counsel and assist in preparing his defense.  (Doc. 1 at 7-24; Doc. 2 at 1-4.)  Petitioner further argues that the state court failed to adequately address the effect of his memory impairment on competency.  (Doc. 2 at 2.)  Thus, Petitioner argues that the trial court should have found him incompetent based on the evidence presented.

Whether Petitioner was competent to stand trial is a factual question.  *See Dennis ex rel. Butko v. Budge*, 378 F.3d 880, 891 (9th Cir. 2004).  Accordingly, this Court considers whether the state courts' decisions were "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's factual determination that a defendant is competent to stand trial is presumed correct.  28 U.S.C. § 2254(e)(1); *see also Demosthenes v. Baal*, 495 U.S. 731, 734-35 (1990) (stating that a state court's conclusion regarding a defendant's competency is entitled to the presumption of correctness).  Petitioner has the burden of rebutting the state courts' factual determinations by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Petitioner, however, does not point to any evidence in the record that would suggest the Arizona state courts' determinations that he was competent to be tried were objectively unreasonable.  Therefore, he has not overcome the presumption of correctness.

Before trial, Petitioner argued that he had brain damage the rendered him unable to assist defense counsel.  (Doc. 11, Ex. T.)  The trial court held a hearing to determine Petitioner's competency to stand trial.  (Doc. 11, Ex. T; Doc. 13, Ex. A.)  Petitioner's expert, Dr. James P. Sullivan, testified that Petitioner's short-term memory and his ability

to retain and evaluate new information were "profoundly impaired" by brain trauma, that his "working memory" could not retain information for more than "a few seconds," and that his short-term recall was "about five or six seconds." (Doc. 11, Ex. T at 31, 33.) Dr. Sullivan further testified Petitioner was "extremely suggestible and extremely compliant," raising concerns about his ability to consult with counsel, make his own decisions, or help challenge a witness's testimony. (Doc. 11, Ex. T at 38; Doc. 13, Ex. A at 22.) Dr. Sullivan opined that Petitioner's ability to assist counsel was "potentially . . . severely compromised by the extreme nature of his memory impairment." (Doc. 13, Ex. A at 19.)

The court-appointed experts, Dr. Segal and Dr. Mongrovejo, completed reports that were submitted to the trial court and filed under seal, but they did not testify during the Rule 11 evidentiary hearing. (Doc. 11, Ex. T; Doc. 13 at 1; Doc. 13, Ex. A.) The appellate court cites to these reports in its decision. (Doc. 11, Ex. J.) Dr. Segal opined that Petitioner could "register and recall three out of three objects at different intervals throughout the interview," "spell WORLD forward and backward," and "follow a complex, three step command with no difficulty." (*Id.* at 6.) Dr. Segal also reported that Petitioner related the "events he [was] accused of, including the location of the alleged crime, the time frame of the alleged crime, that the alleged victim was male, and that the alleged victim was shot." (*Id.*) Dr. Segal believed Petitioner could recognize possible "distortions" in testimony and "the need to inform his attorney in such an instance." (*Id.*) Dr. Mongrovejo concluded Petitioner's memory "appeared intact," that he had a "legal strategy," and that he was "willing to work with his attorney in his own defense." (*Id.*) Both court-appointed experts believed Petitioner was competent to stand trial. (*Id.* at 6-7.)

At the conclusion of the Rule 11 hearing, the court "rejected Dr. Sullivan's testimony and "accept[ed] the testimony of Dr. Segal, even in preference to Dr. Mongrovejo." (Doc. 11, Ex. T at 87.) The court concluded that "Petitioner understood the nature and object of the proceedings and [was] able to assist his attorney,

and [was] therefore competent pursuant to the statute." (*Id.*)  The appellate court affirmed that ruling.  (Doc. 11, Ex. J.)

As the appellate court noted, the trial court received conflicting expert evidence. It rejected Dr. Sullivan's testimony and accepted the court-appointed experts' opinions. (Doc. 11, Ext. T at 87.)  The appellate court noted that reports from two court-appointed experts indicated that Petitioner's memory impairment was not as severe as his expert claimed.  (Doc. 11, Ex. J at 5-6.)  Additionally, the appellate court found that evidence in the state court record indicated that Petitioner performed relatively well on memory tests, could relate details about the crime and his case, had a memory that "appeared intact," and "had a legal strategy."  (Doc. 11, Ex. at 6-7.)  Petitioner has not offered clear and convincing evidence to rebut the state court's description of the evidence that was in the state court record.  *See* 28 U.S.C. § 2254(e)(1).  Accordingly, the Court defers to the facts contained in the state courts' decisions.  The record reflects that the Arizona trial and appellate courts were faced with conflicting evidence and the decision to credit the testimony of the court-appointed experts was not "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d)(2).

Petitioner also argues that the trial court applied the incorrect legal standard to determine his competency.  As set forth below, this claim lacks merit.  Under clearly established federal law, a criminal defendant is competent to stand trial if he has (i) a rational and factual understanding of the proceedings and (ii) sufficient present ability to consult with counsel "with a reasonable degree of rational understanding."  *Dusky*, 362 U.S. at 403.  As the Arizona Court of Appeals noted, the trial court's competency determination was consistent with this standard as evidenced by its statement that Petitioner "understand[s] the nature and object of the proceedings and is able to assist his

attorney, and is therefore competent pursuant to the statute."[6]  (Doc. 11, Ex. J at 7; Ex. T at 87.)

Although the trial court did not specifically apply the *Dusky* standard, the appellate court's conclusion that the trial court applied a correct standard to determine Petitioner's competency is not contrary to or an unreasonable application of Supreme Court precedent.  The Supreme Court has described competency using language nearly identical to that applied by the trial court in this case.  The Supreme Court has explained that "[r]equiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." *Godinez v. Moran*, 509 U.S. 389, 402 (1993); (*see* Doc. 11, Ex. T at 87 (stating that Petitioner "underst[oo]d the nature and object of the proceedings and [was] able to assist his attorney, and [was] therefore competent pursuant to the statute.").)  Thus, the standard that the trial court used to determine Petitioner's competency was consistent with clearly established federal law on the issue.  Therefore, Petitioner is not entitled to habeas corpus relief on Ground One.

**B.      Ground Three (b) — Confrontation Clause**

In Ground Three (b), Petitioner asserts a Confrontation Clause violation based on the trial court's admission of testimony regarding Merritt's statements to his father and Chris about his truck being broken into and his gun being stolen.   (Doc. 1 at 37.) Merritt's father testified that on the morning of the murder, Merritt called and told him someone had broken into his truck and stolen his handgun.  (Doc. 11, Ex. V at 7-9.) Chris testified that after discovering that Merritt's truck had been broken into, he helped Merritt look through the truck to see what was missing, and Merritt said "a lockbox containing his gun" was missing.  (Doc. 11, Ex. U at 68.)

---

[6]  The trial court apparently referred to Ariz. Rev. Stat. § 13-4501, which defines competency to stand trial in a manner similar to *Dusky*.   Section 13-4501 defines incompetence "as a result of a mental illness, defect or disability a defendant is unable to understand the nature and object of the proceeding or to assist in the defendant's defense."

The Arizona Court of Appeals rejected Petitioner's claim that the admission of these statements at trial violated the Confrontation Clause. (Doc. 11, Ex. J at 16-17.) The court concluded that the challenged statements that Merritt made to Chris and his father constituted sharing information with a friend and a family member in the nature of "casual remark[s]" and were not testimonial under *Crawford v. Washington,* 541 U.S. 36 (2004). (*Id.*)   This Court reviews the state court's decision to determine if it was an "unreasonable" application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

The Sixth Amendment's Confrontation Clause prohibits the admission of out-of-court testimonial statements unless: "(1) the declarant is unavailable and (2) the defendant 'had a prior opportunity to cross-examine' the declarant." *Crawford*, 541 U.S. at 59.   Generally, a statement is testimony when it is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51.   Testimonial statements include affidavits, custodial examinations, prior testimony, depositions, or confessions. *Id.* at 51-52.   For example, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 51.

The state appellate court concluded that the circumstances surrounding Merritt's statements about his gun being stolen indicate he did not make those statements for the purpose of establishing or proving that fact.   The state court reasonably concluded that Merritt's call to his father, during which he told him about the break-in and theft, was a "casual remark" to a family member rather than a "formal statement to government officers." *See id*.   The state court reasonably concluded that Merritt's statement to Chris was also a casual remark and not testimony. *See Hundley v. Montgomery*, 2014 WL 1839116, at *11 (E.D. Cal. May 8, 2014) (concluding that the petitioner's statements to a friend were not formal statements to a government official, but informal statements to a friend and, therefore, were not testimonial and did not violate the Confrontation Clause).

Merritt made the challenged statement to Chris while they were looking through the truck to determine what was missing.

Petitioner argues that because Merritt called his dad for the gun's serial number and took pictures of the damage to his truck, Merritt intended the statements to be used in the investigation and prosecution of a crime.  (Doc. 1 at 43-44.)  The record reflects that Merritt's statements to his dad and Chris were made in the course of his gathering information to give to the police and were not "formal statements to government officers."  *Crawford*, 541 U.S. at 51.  Therefore, the state courts reasonably concluded that those statements were not testimonial under *Crawford*.  *See Delgadillo v. Woodford*, 527 F.3d 919, 926-27 (9th Cir. 2008) (concluding that the state court's conclusion that non-testifying declarant's statements to coworkers that defendant abused her were not testimonial was reasonable under the AEDPA).

Even if this Court were to determine that the state court's decision was unreasonable, Petitioner would not be entitled to habeas corpus relief unless that ruling resulted in "actual prejudice."  *See Benn*, 283 F.3d at 1052.  Thus, any constitutional error would only entitle Petitioner to relief if that error had a "substantial and injurious effect or influence in determining the jury's verdict."  *See Brecht*, 507 U.S. at 631.

Here, Petitioner does not establish that the admission of Merritt's statements to his dad and to Chris about the break in of his truck and the stolen gun had any effect on the jury's verdict.  The evidence at trial indicated that Petitioner was in the backyard of Ellacia's house, and Chris, who was in the front yard, heard a gunshot and then saw Petitioner walk from the backyard holding a gun.  (Doc. 11, Ex. J at 3.)  Petitioner also had Merritt's cellphone and gun magazines.  (*Id.*)  Chris walked away; Petitioner followed Chris and fired the gun once or twice.  (*Id.*)  There was also evidence that Petitioner dragged Merritt's body from the backyard and that Chris helped Petitioner put Merritt's body into a truck.  (*Id.*)  Chris watched Petitioner put Merritt's body in a wash in the desert.  (*Id.*)  Ellacia discovered a pool of blood, later identified as Merritt's blood, and his wallet and identification in her backyard.  (*Id.*)  When arrested, Petitioner had

Merritt's gun, two loaded magazines, the key to Merritt's truck, and Petitioner and was wearing Merritt's sweatshirt, which was stained with Merritt's blood.  (*Id.*)  Gunshot residue testing indicated that Petitioner had fired a firearm.  (*Id.* at 3-4.)  Chris eventually admitted his involvement and led police to Merritt's body.  (*Id.* at 4.)

This evidence, which is not based on Merritt's statements to his dad or Chris, overwhelmingly supports the jury's verdict.  Therefore, the Court finds that, even if the trial court erred in admitting Merritt's statements, and the appellate court's decision rejecting Petitioner's Confrontation Clause claim was unreasonable, Petitioner's claim fails because he cannot establish that the testimony of Merritt's statements had a "substantial and injurious effect or influence" on the jury's verdict.  *Brecht*, 507 U.S. at 631.  Therefore, he cannot establish "actual prejudice" and is not entitled to habeas corpus relief on Ground Three (b).

## III.   Conclusion

As set forth above, Grounds Two, Three (a), and Three (c) are procedurally barred from federal habeas corpus review.  Although Grounds One and Three (b) are properly before the court on habeas corpus review, Petitioner has not shown that the state court's resolution of Grounds One and Three (b) is based on an unreasonable determination of the facts, or that it is contrary to, or based on an unreasonable application clearly established federal law.  *See* 28 U.S.C. § 2254(d).  Accordingly, Petitioner is not entitled to habeas corpus relief.

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.  The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72.  The parties have fourteen days within which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 8th day of April, 2016.


_____
Bridget S. Bade
United States Magistrate Judge